**In re Randy GEE, Debtor,**

**Kelly HAMMOND, Plaintiff,**

v.

**Randy GEE, Defendant.**

**In re STAR LIMOUSINE, INC., Debtor,**

**Kelly HAMMOND, Plaintiff,**

v.

**STAR LIMOUSINE, INC., Defendant.**

**Nos. 91–32836, 91–32837.
Adv. Nos. 91–34513, 91–34514.**

United States Bankruptcy Court,
W.D. Washington.

June 28, 1993.

Ellen M. Ryan, Seattle, WA, for plaintiff.

Tyler K. Firkins, Bellevue, WA, for defendants.

## MEMORANDUM DECISION

PHILIP H. BRANDT, Bankruptcy Judge.

### I. ISSUE

The question here presented is whether a judgment awarding damages and attorney's fees for sexual harassment is nondischargeable under § 523(a)(6) of the Bankruptcy Code.[1]

### II. BACKGROUND

Plaintiff Kelly Hammond alleged, in her Superior Court Complaint[2]:

6. Randy Gee sexually harassed Ms. Hammond with his uninvited and unwanted attention and touching, despite Ms. Hammond's telling him that she was not interested.

7. This sexual harassment was persuasive and affected Ms. Hammond's working conditions and her ability to work.

8. Defendant Gee wrongfully terminated Ms. Hammond's employment because she would not accept his sexual advances.

9. As a direct result of this harassment and battery against her person, Ms. Hammond lost wages, suffered emotional distress and resultant physical ailments and other damages.

The case was tried to a jury. Instruction No. 9, based on *Glasgow v. Georgia Pacific*

---

1. 11 U.S.C.: references to "§", "Section" or to "Chapter:, without more, are to the Bankruptcy Code.

2. *Kelly Hammond v. Randy Gee and Star Limousine, Inc.,* King County [Washington] Superior Court No. 90–2–07423–4.

*Co.*, 103 Wash.2d 401, 693 P.2d 708 (1985), required a preponderance of evidence that the Defendants' harassment of Hammond:

1. was unwelcome, not solicited or incited by Hammond, and that she regarded it as undesirable and offensive;

2. was motivated by Hammond's gender;

3. affected the terms and condition of her employment; and

4. was personally conducted by her employer's owner, manager or officer[3].

for the jury to find Defendants liable for sexual harassment.

The jury found in her favor, without a special verdict or finding of what acts constituted the harassment, or any finding of Defendants' state of mind respecting those acts. The Superior Court entered judgment for Hammond, jointly and severally against Defendants Gee and Star Limousine, Inc., for sexual harassment, willful withholding of wages, and denial of lunch breaks in violation of state law on 19 April 1991. The damages for sexual harassment were trebled in accordance with state law, and Hammond was awarded her attorney's fees and costs.

Gee and Star Limousine filed Chapter 7 petitions on 1 July 1991. Hammond filed these adversary proceedings to have the debt declared nondischargeable under § 523(a)(6) of the Bankruptcy Code.[4]

Hammond moved for summary judgment. Because negligent conduct could support a verdict under Instruction No. 9, and the evidence submitted raised issues of material fact respecting those questions, I denied the motion.[5]

### III. TRIAL

At trial[6] Hammond, a community college student and part-time model, testified about her hiring by Gee as a receptionist for Star Limousine, over better qualified applicants (whose resumes she later filed), apparently on the basis of her physical attractiveness. She described advances and importunings by Gee, and her attempts to end them. Hammond also testified she was fearful of Gee having seen him enraged at various people, including herself. Hammond's sister Victoria visited her at the Star Limousine office, and testified about witnessing Gee slip into a chair behind Hammond as Hammond was sitting down.

Gee stated in his trial declaration that he "... believed that Ms. Hammond and I had a relationship somewhat different than most employer-employee relationships[.]", that he did not intend to offend her, that he "... genuinely believed that Ms. Hammond and I were engaged in a mutual relationship[.]" and that Hammond was flirtatious. Gee also presented the declarations of Reta Gee, his mother and a retired but still occasional employee of Star Limousine, and Bea Haggerty (formerly Beverly David), another occasional employee of Star Limousine. Ms. Gee said that Hammond never indicated to her that Gee was acting in an inappropriate manner, and Ms. Haggerty that Hammond was a flirtatious person who behaved inappropriately in the business context.

The parties differed on the question of whether Ms. Hammond quit or was fired, a

---

3. Randy Gee was the sole shareholder, officer, and director of Star Limousine.

4. These are core proceedings and this Court has jurisdiction. 28 U.S.C. § 157(b)(2)(I) and 1334; GR 7, Local Rules W.D.Wash.

5. I also denied Defendants' motion to dismiss Hammond's nondischargeability cause of action, while granting their motion to dismiss (for lack of standing) her causes of action for fraudulent and preferential transfers. Finally, I granted Hammond summary judgment on her claim of nondischargeability of her judgment for Defendants' willful withholding of her wages.

As corporations do not get Chapter 7 discharges, § 727(a)(1), the remaining action pertains only to Gee.

6. Conducted, without objection, under an Order requiring the parties to submit their cases in chief by declarations, with the declarants present for cross examination. *In re Adair,* 965 F.2d 777 (9th Cir.1992). Each declarant testified.

question of no particular relevance,[7] and attacked each other's credibility.

The evidence clearly established that Gee made sexual advances on Hammond (uncontested) which included physical contact (the parties differ on the extent). To the extent the question remains after the state court's verdict, the preponderance of the evidence at trial establishes Hammond resisted Gee's advances. Respecting Gee's subjective intent, the only evidence submitted (and perhaps the only possible evidence, short of psychiatric testimony or inconsistent statements) is his testimony that he was seeking a consensual relationship.

## IV. ANALYSIS

**A.** *Standard of Proof.* To prevail, Hammond must show nondischargeability under § 523(a)(6) by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *In re Littleton,* 942 F.2d 551, 554 (9th Cir.1991).

**B.** *Collateral Estoppel.* Hammond correctly argues that collateral estoppel applies, *Grogan v. Garner,* note 11, 498 U.S. at 284, note 11, 111 S.Ct. at 658. This doctrine, also denominated "issue preclusion", prevents relitigation of factual issues actually litigated and necessarily decided in a prior judicial proceeding. *Robi v. Five Platters,* 838 F.2d 318, 321–322 (9th Cir.1988).

Under the Full Faith and Credit Act, 28 U.S.C. § 1738, I must give the state judgment "the same full faith and credit ... as [it has] by law or usage in the courts of [Washington] ..." Under Washington law, issue preclusion prevents parties from denying those facts necessarily adjudicated in a prior action. *Rice v. Janovich,* 109 Wash.2d 48, 65, 742 P.2d 1230 (1987).

Those facts which the state court jury necessarily (or by special verdict) found in the state court action are established in this action: Gee's sexual advances (not denied here), that they were unwelcome, and Hammond's damages.

**C.** *Elements.* Section 523(a)(6) of the Bankruptcy Code excepts from discharge debts "for willful and malicious injury by the debtor to another ..." or to the property of another. To prevail under this provision, a plaintiff must establish that the debtor deliberately or intentionally committed a wrongful act which necessarily produced harm without just cause or excuse. *In re Cecchini,* 780 F.2d 1440, 1443 (9th Cir.1986); *Littleton,* 942 F.2d at 554. Unfortunately for the Plaintiff, the elements of sexual harassment under Washington law and those of nondischargeability under § 523(a)(6), as articulated in *Cecchini* and *Littleton,* are not congruent. Considered serially:

1. *Willful:* In *Cecchini,* the Ninth Circuit construed "willful" in § 523(a)(6) to mean deliberate or intentional. Gee does not contend that his advances were negligent or accidental. This element is satisfied.

2. *Malicious:* Gee argues that his intentions, if not exactly honorable, were to have a consensual arrangement, and therefore his actions were not wrongful, did not necessarily produce harm, and were not without just cause and excuse.

a. *Wrongful Act:* The state court jury necessarily found, under Instruction No. 9 (quoted above) that Gee's actions affected the terms and conditions of her employment. Under Instruction No. 10, to find an effect on the terms or conditions of employment, the jury had to find the harassment "... sufficiently persuasive so as to alter the conditions of employment and create an abusive working environment, considering the totality of the circumstances facing the Plaintiff."

Sexual harassment in the employment context is a violation of Washington's Law Against Discrimination, RCW Chapter 49.-60. *Glasgow,* 103 Wash.2d at 405–406, 693 P.2d 708. The Washington legislature has found that such discrimination "... threatens not only the rights and proper privileges of [the state's] inhabitants but me-

---

**7.** As sexual harassment can (probably) constitute constructive discharge under Washington, as well as federal, law. *Brooms v. Regal Tube*

*Co.,* 881 F.2d 412 (7th Cir.1989). See *Glasgow,* note 2, 103 Wash.2d at 406, 693 P.2d 708.

naces the institutions and foundation of a free democratic state." RCW 49.60.010. RCW 49.60.180 declares, without regard to intent, "it is an unfair practice for any employer: ... (3) to discriminate against any person in compensation or in other terms or conditions of employment because of ... sex ...".

Additionally, Gee's conduct amounts to battery of Hammond, fourth degree assault under Washington law. RCW 9.36.-041; *State v. Davis*, 60 Wash.App. 813, 808 P.2d 167 (1991) and 119 Wash.2d 657, at 661 n. 3, 835 P.2d 1039 (1992). *See also* WPIC 35.50 [8].

Whatever his intentions, Gee's conduct was wrongful. *Grogan v. Garner* teaches that fraud under state law is sufficient to support nondischargeability, and *Cecchini* that conversion is; sexual harassment is at least equally wrongful. This element is satisfied.

b. *Necessarily Produced Harm:* The jury found that Hammond was actually harmed, but Gee contends that, because his motives, while not pure, were friendly, his conduct did not necessarily produce harm.

Gee asserts that *Littleton* is more restrictive that *Cecchini*, and requires the nondischargeability plaintiff to show the defendant intended to cause the resulting injury. He misreads the case: the Ninth Circuit explicitly held, as in *Cecchini*, that the act in question must necessarily cause harm to the creditor, but that the creditor need not show an intent to harm the creditor. However, although there was actual harm to the creditor in *Littleton*, the Bankruptcy Court there found as fact that the debtor's mishandling of inventory when done would not necessarily harm the creditor. *Littleton*, 942 F.2d at 555. Here, Gee has submitted no evidence from which I could find his sexual harassment of Hammond would not necessarily produce harm.

It is foreseeable that unwelcome, unsolicited, and uninvited sexual advances, regarded as undesirable and offensive by the victim, would result in injury to the victim. *In re Britton*, 950 F.2d 602, 605 (9th Cir. 1991). It is likewise foreseeable that battery would result in injury to the victim. *In re Miera*, 926 F.2d 741 (8th Cir.1991). This element is established.

c. *Without Just Cause or Excuse:* Gee implicitly argues this element is not present because his intention was "to effect mutual happiness" rather than to do harm. He has adduced no other evidence of justification or excuse. Nor has Gee cited any authority or even made a credible argument that his subjective intent justifies or excuses his unwelcome, unsolicited, uninvited, undesirable, and offensive advances. This element is established. Gee's conduct was malicious under the *Cecchini/Littleton* standard.

D. *Damages.* Gee argues that, since Hammond presented no competent medical testimony in this court that his actions caused the injuries Hammond claims, her case fails, citing *Nord v. Shoreline Savings Association*, 116 Wash.2d 477, 805 P.2d 800 (1991) and *Clevenger v. Fonseca*, 55 Wash.2d 25, 345 P.2d 1098 (1959). *Nord* and *Clevenger* consider the sufficiency of evidence to support damages for emotional distress under Washington law. That question is not before the court in determining nondischargeability under § 523(a)(6): the state court has already found the injury and established the damages, and Gee is precluded from arguing that there are none. *Grogan v. Garner; Robi v. Five Platters.*

E. *Punitive Damages and Attorney's Fees.* Punitive damages predicated on willful and malicious acts of debtors are nondischargeable, *Britton*, 950 F.2d at 606–607, and Washington's statutory treble damages are a variety of punitive damages. The same rationale, that they are liabilities resulting from willful and malicious injuries, supports the nondischargeability of the attorney's fees awarded Hammond by

8. Washington Pattern Jury Instructions—Criminal, Washington Supreme Court Committee on Jury Instructions, Honorable S. Soderland, Chairman, 11 Washington Practice (West, 1977); and R. Ferguson, Jr., and S. Fine, *Criminal Law*, Volume 13A, Washington Practice, § 404 (West, 1990) and *State v. Humphries*, 21 Wash.App. 405–408, 409, 586 P.2d 130 (1978).

the state court.[9] *In re Levy*, 951 F.2d 196, 199 (9th Cir.1991).

Hammond also seeks her attorney's fees and costs in this nondischargeability action, arguing that she is entitled to them under RCW 49.60.030(2), which provides:

> Any person deeming himself injured by any act in violation of this chapter shall have a civil action in a court of competent jurisdiction to enjoin further violations, to recover the actual damages sustained by him, or both, together with the cost of suit including a reasonable attorney's fees or any other remedy authorized by this chapter or the United States Civil Rights Act of 1964[10];

Gee did not respond to this request.

Even if Gee's were not a no-asset case, establishing nondischargeability is a component of Hammond's attempt to recover her actual damages, as it preserves her right to collect her entire award at some time in the future. This action is within the scope of the quoted section, and Hammond is entitled to her costs and fees.

## V. CONCLUSION

Gee's sexual harassment was deliberate and intentional, wrongful, necessarily produced harm, and was without just cause and excuse. His liability on Hammond's state court judgment, including statutory trebled damages and costs and attorney's fees, is nondischargeable, and I will enter judgment so providing. Additionally, Hammond is entitled to her attorney's fees and costs in this action.

---

**9.** Gee argues that a portion of the attorney's fees awarded Hammond in the state court are dischargeable, as that jury found Gee and Star Limousine did not willfully deny her lunch breaks. That argument is flawed: Hammond was awarded attorney's fees in the state court under RCW 49.52.070 and 49.60.030(3). The first section relates to the unlawful withholding of wages, and the second to sex discrimination (i.e., sexual harassment). All of Hammond's state court attorney's fee award is nondischargeable.

**10.** 42 U.S.C.A. §§ 2000a et seq.